No. 22-1712

---

# In the United States Court of Appeals for the Fourth Circuit

---

STEPHEN R. PORTER, PH.D.,

*Plaintiff-Appellant,*

v.

BOARD OF TRUSTEES OF NORTH CAROLINA STATE UNIVERSITY; W. RANDOLPH WOODSON, in his official capacity; MARY ANN DANOWITZ, in both her official and individual capacities; JOY GASTON GAYLES, in both her official and individual capacities; JOHN K. LEE, in both his official and individual capacities; and PENNY A. PASQUE, in both her official and individual capacities.

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of North Carolina

---

## JOINT APPENDIX

Samantha K. Harris
ALLEN HARRIS PLLC
PO Box 673
Narberth, Pennsylvania 19072
860.481.7899

Jonathan A. Vogel
VOGEL LAW FIRM PLLC
6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, North Carolina 28210
704.552-.750

*Counsel for Appellant Stephen R. Porter, PH.D.*

Kari R. Johnson
Vanessa N. Totten
N.C. DEPARTMENT OF JUSTICE
PO Box 629
Raleigh, North Carolina 27602-0629
919.716.6920

Eric M. David
BROOKS, PIERCE, MCLENDON, HUMPHREY & LEONARD, LLP
PO Box 1800
Raleigh, North Carolina 27602
919.573.6203

*Counsel for Appellees Board of Trustees of North Carolina State University, et al.*

# TABLE OF CONTENTS

**Page**

District Court Docket Sheet.............................................................J.A. 001

Plaintiff's Complaint and Jury Demand (DE 1)...............................J.A. 006

Defendants' Motion to Dismiss for Failure to State a Claim
    (DE 15)....................................................................................J.A. 033

Court's Order on Motion to Dismiss (DE 26)..................................J.A. 039

Court's Judgment (DE 27)...............................................................J.A. 054

Plaintiff's Notice of Appeal (DE 28)................................................J.A. 055

APPEAL,CLOSED,Jury Trial,MEDIATION,USMJ Meyers

**U.S. District Court**
**EASTERN DISTRICT OF NORTH CAROLINA (Western Division)**
**CIVIL DOCKET FOR CASE #: 5:21–cv–00365–BO**

| | |
|---|---|
| Porter v. Board of Trustees of North Carolina State University et al | Date Filed: 09/14/2021 |
| | Date Terminated: 06/17/2022 |
| Assigned to: District Judge Terrence W. Boyle | Jury Demand: Plaintiff |
| Case in other court:  USCA, 22–01712 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 28:1331 Fed. Question: Civil Rights Violation | Jurisdiction: Federal Question |

**Plaintiff**

**Stephen R. Porter**                           represented by   **Samantha K. Harris**
*PH.D.*                                                         Allen Harris PLLC
                                                                PO Box 673
                                                                Narberth, PA 19072
                                                                860–288–5481
                                                                Fax: 860–481–7899
                                                                Email: sharris@allenharrislaw.com
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Jonathan A. Vogel**
                                                                Vogel Law Firm PLLC
                                                                6000 Fairview Road, Suite 1200
                                                                Charlotte, NC 28210
                                                                704–552–3750
                                                                Email: jonathan.vogel@vogelpllc.com
                                                                *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Board of Trustees of North Carolina**         represented by   **Kari R. Johnson**
**State University**                                            North Carolina Department of Justice
                                                                Post Office Box 629
                                                                Raleigh, NC 27602–0629
                                                                919–716–6920
                                                                Fax: 919–716–6764
                                                                Email: kjohnson@ncdoj.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Vanessa N. Totten**
                                                                NC Department of Justice
                                                                Post Office Box 629
                                                                Raleigh, NC 27602–0629
                                                                919–716–6655
                                                                Fax: 919–716–6761
                                                                Email: vtotten@ncdoj.gov
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Defendant**

**Mr. W. Randolph Woodson**                     represented by   **Kari R. Johnson**
*in his official capacity*                                      (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Vanessa N. Totten**
                                                                (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mary Ann Danowitz**
*in both her official and individual*
*capacities*

represented by **Kari R. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vanessa N. Totten**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joy Gaston Gayles**
*in both her official and individual*
*capacities*

represented by **Kari R. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vanessa N. Totten**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**John K. Lee**
*in both his official and individual*
*capacities*

represented by **Kari R. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vanessa N. Totten**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Penny A. Pasque**
*in both her official and individual*
*capacities*

represented by **Kari R. Johnson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vanessa N. Totten**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/14/2021 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number 0417−6230286.), filed by Stephen R. Porter. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons Board of Trustees of North Carolina State University, # 3 Proposed Summons W. Randolph Woodson, # 4 Proposed Summons Mary Ann Danowitz, # 5 Proposed Summons Joy Gaston Gayles, # 6 Proposed Summons John K. Lee, # 7 Proposed Summons Penny A. Pasque) (Vogel, Jonathan) (Entered: 09/14/2021) |
| 09/14/2021 | 2 | Notice of Appearance filed by Jonathan A. Vogel on behalf of Stephen R. Porter. (Vogel, Jonathan) (Entered: 09/14/2021) |
| 09/14/2021 | 3 | Notice of Special Appearance for non−district by Jonathan A. Vogel on behalf of Stephen R. Porter. (Vogel, Jonathan) (Entered: 09/14/2021) |

| 09/14/2021 | 4 | Financial Disclosure Statement by Stephen R. Porter (Vogel, Jonathan) (Main Document 4 flattened and replaced on 9/22/2021) (Edwards, S.). (Entered: 09/14/2021) |
|---|---|---|
| 09/15/2021 | | Notice to Counsel regarding: 4 Financial Disclosure Statement. Counsel is reminded that the filing user must lock or flatten the PDF document. Failure to flatten documents may result in the clerks office issuing a notice of deficiency. Counsel should "flatten" (*the financial disclosure statement*) prior to attaching it in accordance with Section IV.B of the CM/ECF Policies and Procedures Manual. No further action is needed. (Rudd, D.) (Entered: 09/15/2021) |
| 09/15/2021 | | NOTICE OF DEFICIENCY regarding 3 Notice of Special Appearance. Pursuant to Local Rule 83.1(e)(1), the Special Appearance Attorney must complete the "electronic filing attorney registration form" and comply with Section IV.D of the Policy Manual. Once Counsel receives their login and password, they must file their notice of special appearance so that they will be added to the docket and be able to receive notices of electronic filing "NEF's". (Rudd, D.) (Entered: 09/15/2021) |
| 09/15/2021 | 5 | Summons Issued as to Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (*NOTICE: Counsel shall print the attached summons and serve with other case opening documents in accordance with Fed.R.Civ.P. 4.*) (Rudd, D.) (Entered: 09/15/2021) |
| 09/30/2021 | 6 | Notice of Appearance filed by Vanessa N. Totten on behalf of Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (Totten, Vanessa) (Entered: 09/30/2021) |
| 09/30/2021 | 7 | Notice of Appearance filed by Kari R. Johnson on behalf of Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (Johnson, Kari) (Entered: 09/30/2021) |
| 09/30/2021 | 8 | Waiver of Service Returned Executed filed by Board of Trustees of North Carolina State University. Board of Trustees of North Carolina State University waiver sent on 9/27/2021, answer due 11/26/2021. (Harris, Samantha) (Entered: 09/30/2021) |
| 09/30/2021 | 9 | Waiver of Service Returned Executed filed by John K. Lee. John K. Lee waiver sent on 9/27/2021, answer due 11/26/2021. (Harris, Samantha) (Entered: 09/30/2021) |
| 09/30/2021 | 10 | Waiver of Service Returned Executed filed by Joy Gaston Gayles. Joy Gaston Gayles waiver sent on 9/27/2021, answer due 11/26/2021. (Harris, Samantha) (Entered: 09/30/2021) |
| 09/30/2021 | 11 | Waiver of Service Returned Executed filed by Mary Ann Danowitz. Mary Ann Danowitz waiver sent on 9/27/2021, answer due 11/26/2021. (Harris, Samantha) (Entered: 09/30/2021) |
| 09/30/2021 | 12 | Waiver of Service Returned Executed filed by Penny A. Pasque. Penny A. Pasque waiver sent on 9/27/2021, answer due 11/26/2021. (Harris, Samantha) (Entered: 09/30/2021) |
| 09/30/2021 | 13 | Waiver of Service Returned Executed filed by W. Randolph Woodson. W. Randolph Woodson waiver sent on 9/27/2021, answer due 11/26/2021. (Harris, Samantha) (Entered: 09/30/2021) |
| 09/30/2021 | 14 | Notice of Special Appearance for non−district by Samantha K. Harris on behalf of Stephen R. Porter. (Harris, Samantha) (Entered: 09/30/2021) |
| 10/14/2021 | | Case Selected for Mediation − A printable list of certified mediators for the Eastern District of North Carolina is available on the court's Website, http://www.nced.uscourts.gov/attorney/mediators.aspx. Please serve this list on all parties. (Sellers, N.) (Entered: 10/14/2021) |
| 11/23/2021 | 15 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (Attachments: # 1 Exhibit A − Blog Post) (Totten, Vanessa) (Entered: 11/23/2021) |

| 11/23/2021 | 16 | Memorandum in Support regarding 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (Totten, Vanessa) (Entered: 11/23/2021) |
|---|---|---|
| 11/23/2021 | 17 | ORDER FOR DISCOVERY PLAN sent to all parties. Signed by Peter A. Moore, Jr., Clerk of Court on 11/23/2021. (Waddell, K.) (Entered: 11/23/2021) |
| 12/03/2021 | 18 | Joint MOTION to Stay regarding 17 Order for Discovery Plan filed by Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (Attachments: # 1 Text of Proposed Order Joint Motion to Stay Order) (Totten, Vanessa) (Entered: 12/03/2021) |
| 12/03/2021 | 19 | Memorandum in Support regarding 18 Joint MOTION to Stay regarding 17 Order for Discovery Plan filed by Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (Totten, Vanessa) (Entered: 12/03/2021) |
| 12/05/2021 | 20 | Joint MOTION for Extension of Time to File Response/Reply as to 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen R. Porter. (Attachments: # 1 Text of Proposed Order) (Vogel, Jonathan) (Entered: 12/05/2021) |
| 12/06/2021 |  | Motion Referred to US Magistrate Judge Brian S. Meyers regarding 18 Joint MOTION to Stay regarding 17 Order for Discovery Plan. (Stouch, L.) (Entered: 12/06/2021) |
| 12/06/2021 |  | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding 20 Joint MOTION for Extension of Time to File Response as to 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Stouch, L.) (Entered: 12/06/2021) |
| 12/06/2021 |  | TEXT ORDER granting the parties' Joint Motion for Extension of Time 20 . For good cause shown, it is ordered that plaintiff has up to and including January 18, 2022, within which to respond to the Motion to Dismiss 15 . Defendants have up to and including March 3, 2022, within which to file a reply. Signed by Peter A. Moore, Jr., Clerk of Court on 12/6/2021. (Hockaday, A.) (Entered: 12/06/2021) |
| 12/13/2021 | 21 | ORDER granting 18 Motion to Stay. In the event Defendants Motion to Dismiss is denied in whole or in part, the parties are hereby ordered to file a report pursuant to Fed. R. Civ. P. 26(f) within 30 days of the entry of the Courts order resolving Defendants Motion to Dismiss. Signed by Magistrate Judge Brian S. Meyers on 12/13/2021. (Stouch, L.) (Entered: 12/13/2021) |
| 01/14/2022 | 22 | RESPONSE to Motion regarding 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen R. Porter. (Harris, Samantha) (Entered: 01/14/2022) |
| 01/14/2022 |  | REMINDER TO COUNSEL. Pursuant to Judge Boyle's Practice Preferences located on the court's website, counsel shall provide a courtesy copy of all documents over 20 pages, by mailing or delivering to the clerk's office in Raleigh. (Stouch, L.) (Entered: 01/14/2022) |
| 03/01/2022 | 23 | REPLY to Response to Motion regarding 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (Totten, Vanessa) (Entered: 03/01/2022) |
| 03/02/2022 |  | Motion Submitted to District Judge Terrence W. Boyle regarding 15 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Stouch, L.) (Entered: 03/02/2022) |
| 03/09/2022 | 24 | MOTION for Leave to File *Sur−Reply in Opposition to Defendants' Motion to Dismiss* filed by Stephen R. Porter. (Attachments: # 1 Exhibit Exhibit 1 – Proposed Sur−Reply, # 2 Exhibit Exhibit 2 – Proposed Order Granting Motion for Leave) (Harris, Samantha) (Entered: 03/09/2022) |
| 03/11/2022 | 25 | RESPONSE in Opposition regarding 24 MOTION for Leave to File *Sur−Reply in Opposition to Defendants' Motion to Dismiss* filed by Board of Trustees of North Carolina State University, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, Penny A. Pasque, W. Randolph Woodson. (Totten, Vanessa) (Entered: 03/11/2022) |

| 03/28/2022 | | Motion Submitted to District Judge Terrence W. Boyle regarding 24 MOTION for Leave to File *Sur–Reply in Opposition to Defendants' Motion to Dismiss.* (Stouch, L.) (Entered: 03/28/2022) |
|---|---|---|
| 06/17/2022 | 26 | ORDER granting 24 Motion for Leave to File sur–reply and granting 15 Motion to Dismiss for Failure to State a Claim. Signed by District Judge Terrence W. Boyle on 6/15/2022. (Stouch, L.) (Entered: 06/17/2022) |
| 06/17/2022 | 27 | JUDGMENT – IT IS ORDERED, ADJUDGED AND DECREED that defendants' motion to dismiss [DE 15] is GRANTED and plaintiff's complaint is DISMISSED in its entirety. Plaintiff's motion for leave to file a sur–reply [DE 24] is GRANTED. This case is closed. Signed by deputy clerk for Peter A. Moore, Jr., Clerk of Court on 6/17/2022. (Stouch, L.) (Entered: 06/17/2022) |
| 06/30/2022 | 28 | Notice of Appeal filed by Stephen R. Porter as to 27 Judgment,. Filing fee, receipt number 0417–6618994. (Vogel, Jonathan) (Entered: 06/30/2022) |
| 06/30/2022 | 29 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals regarding 28 Notice of Appeal. (Foell, S.) (Entered: 06/30/2022) |
| 07/06/2022 | 30 | US Court of Appeals Case Number 22–1712 (Richard Sewell, Case Manager) as to 28 Notice of Appeal filed by Stephen R. Porter. (Foell, S.) (Entered: 07/08/2022) |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
CASE NO. _____

| | |
|---|---|
| STEPHEN R. PORTER, PH.D.,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| v.  ) | |
| ) | |
| BOARD OF TRUSTEES OF NORTH ) | **COMPLAINT AND JURY** |
| CAROLINA STATE UNIVERSITY, W. ) | **DEMAND** |
| RANDOLPH WOODSON, MARY ANN ) | |
| DANOWITZ, JOY GASTON GAYLES, ) | |
| JOHN K. LEE, AND PENNY A. ) | |
| PASQUE, individually and in their ) | |
| official capacities,  ) | |
| ) | |
| Defendants.  ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

Plaintiff Stephen R. Porter Ph.D., by and through counsel, hereby states as follows:

**<u>INTRODUCTION</u>**

1.     The Supreme Court of the United States has made clear that "a state cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Connick v. Myers*, 462 U.S. 138, 142 (1983). That includes a public employee's right to speak "as a citizen upon a matter of public concern." *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir.

1998). Yet in retaliation for Professor Stephen Porter's protected expressions of opinion on important societal issues, Defendants have intentionally and systematically excluded him from departmental programs and activities that are necessary for him to fulfill his job requirements, effectively hollowing his job out from the inside. They have done this in a deliberate effort to set the stage for his eventual termination.

2.      While the structure of Plaintiff's academic department – and thus, the details of the adverse employment actions taken against him – is complex, what is happening is quite simple: Defendants are gradually forcing Plaintiff into what is effectively a "rubber room" in retaliation for his criticisms of the so-called "social-justice" ideology that now prevails both in his department and in academia more broadly.

## JURISDICTION AND VENUE

3.      This action arises under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988.

4.      This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. § 2201-02; and costs and attorneys' fees under 42 U.S.C. § 1988.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and/or all of the acts described in this

Complaint occurred in this district.

<center>**PARTIES**</center>

6.    Plaintiff Stephen R. Porter is a tenured professor in the Department of Educational Leadership, Policy, and Human Development ("ELPHD") within the College of Education at North Carolina State University, a position he has held since 2011.

7.    Defendant Board of Trustees of North Carolina State University ("the Board") is the 13-member governing body of North Carolina State University ("NCSU"), a governmental entity, and is responsible for the administration of NCSU, including but not limited to NCSU's compliance with laws, rules, regulations, and requirements. At all times relevant to this complaint, the Trustees of the Board acted under color of state law and are sued in their official capacities.

8.    Defendant W. Randolph Woodson is the Chancellor of NCSU. He is sued in his official capacity.

9.    Defendant Mary Ann Danowitz is the Dean of the College of Education at NCSU. Defendant Danowitz was instrumental in removing Plaintiff from his departmental Program Area in retaliation for his protected speech and in punitively assigning him a fifth course to teach. Defendant Danowitz acted under color of state law and is sued in both her official and individual capacities.

10.    Defendant Joy Gaston Gayles is a professor and Program Coordinator in ELPHD. Defendant Gaston Gayles was instrumental in excluding Plaintiff from doctoral events and activities critical to the fulfillment of his job duties. Gaston

Gayles also developed a new ELPHD Ph.D. Program Area of Study in "Higher Education Opportunity, Equity, and Justice" but excluded Plaintiff from this new Program Area of Study because of his viewpoints. This action was intended to eliminate Plaintiff from participation in doctoral activities in ELPHD altogether. Defendant Gaston Gayles acted under color of state law and is sued in both her official and individual capacities.

11.    Defendant John K. Lee has been the head of ELPHD since August 2019. Throughout his tenure as Department Head, Defendant Lee has systematically excluded Plaintiff from meetings and activities related to the Higher Education doctoral program, including the advising of Ph.D. students. This has severely hampered Plaintiff's ability both to perform his duties as a current advisor to Higher Education Ph.D. students and his ability to recruit new advisees. These are essential elements of Plaintiff's job without which his future at NCSU is in jeopardy. Defendant Lee acted under color of state law and is sued in both his official and individual capacities.

12.    Defendant Penny A. Pasque was, until July 2019, the head of ELPHD. In July 2019, following significant controversy over a personal blog post Plaintiff wrote criticizing the increased focus on social justice in the field of higher education, Defendant Pasque removed Plaintiff from his departmental Program Area and assigned him to teach a fifth course in retaliation for his protected speech. Defendant Pasque acted under color of state law and is sued in both her official and individual capacities.

## FACTS

13.    NCSU hired Plaintiff as a tenured professor in ELPHD in 2011 to teach graduate-level statistics and research methods courses in the College of Education. ELPHD is located within NCSU's College of Education ("CED"). At the time of his hire, Plaintiff joined the Higher Education Program Area within ELPHD – aimed at students pursuing careers in post-secondary education – because of his prominence in the field of post-secondary research.

14.    The organizational structure of ELPHD is complex but must be fully explained in order to understand the circumstances giving rise to this action.

15.    Plaintiff has remained a member of the Higher Education Program Area, one of several degree program areas within ELPHD, throughout his tenure at NCSU. ELPHD offers two degrees in Higher Education: a Master's and a Ph.D., with no undergraduate students. Plaintiff has had limited involvement with the Master's program during his time at NCSU. He has no Master's advisees and does not attend events related only to the Master's degree.

16.    In 2015, CED faculty voted to create a college-wide Ph.D. program called the Scholar Leader Ph.D. While each Ph.D. program in CED would have its own program-specific courses, all Ph.D. programs within CED would now have common research methods courses and common Scholar Leader courses, taken by all CED Ph.D. students.

17.    As part of the change to the Scholar Leader program, all Ph.D. degree programs are now located within a Ph.D. Program Area of Study ("PAS") – a

category distinct from the Program Areas. In theory, this created two separate tracks, with Master's degrees and certificates located within the original ELPHD Program Areas, and all Ph.D. programs located within the new Ph.D. Program Areas of Study, with possibly differing groups of faculty in each track. In practice, however, ELPHD ignored these new distinctions and continued to address both Master's and Ph.D. matters within the original Program Areas.

18.    Prior to the adverse employment actions imposed upon Plaintiff, Plaintiff spent considerable time on Higher Education Ph.D. activities. Some of these activities include taking on Higher Education Ph.D. advisees every year; serving on Higher Education Ph.D. committees; actively recruiting prospective Ph.D. students through email, phone calls and personal meetings; taking part in the Ph.D. admissions review process; taking part in the annual Open House and Recruitment Weekend activities; reviewing and discussing multiple Diagnostic Advisement Procedure papers (submitted by all 2nd-year doctoral students) and multiple dissertation prospectuses (submitted by all doctoral students in lieu of a comprehensive exam); and engaging in additional activities to help Higher Education doctoral students.

19.    In recent years, Plaintiff has been outspoken about his concern with how the focus on so-called "social justice" is affecting academia in general, and about his concern that the field of higher education study is abandoning rigorous methodological analysis in favor of results-driven work aimed at furthering a highly dogmatic view of "diversity," "equity," and "inclusion."

20.    At a department meeting in Spring 2016, for example, Plaintiff expressed his concerns with a proposal by the CED's Council on Multicultural and Diversity Issues to add a question on diversity to student course evaluations.

21.    To be clear, Plaintiff does not oppose, and in fact supports, the increased recruitment of qualified faculty and students of color in his academic field. But this is not what "diversity" now means in the College of Education.

22.    The proposal was presented at an ELHPD department meeting by Teaching Associate Professor Valerie Faulkner. Citing the validity standards of the American Educational Research Association, Plaintiff asked Faulkner about what work had gone into the design of the question. Survey methodology is one of Plaintiff's areas of research, and he was concerned that in response to social pressure, the department was rushing to include a question that had not been properly designed and thus might be harmful to faculty without yielding useful information.

23.    The discussion was amicable in tone, although perhaps embarrassing for Faulkner, as it became apparent that the Council had created the new question about diversity without consideration or testing for validity and reliability.

24.    However, the incident was later referenced in a departmental "Climate Check Report" conducted by NCSU's Office for Institutional Equity and Diversity (OIED) in May 2017 that labeled Plaintiff as a "bully."

25.    Defendant Penny Pasque became the new ELPHD department head at the beginning of the 2017–2018 academic year. Her biography indicates that she is

committed to and focused upon social justice. She is also involved with the
Association for the Study of Higher Education (ASHE) and was named as editor of
ASHE's research journal in 2019.

26.    On November 2, 2017, Defendant Pasque came to Plaintiff's office for
what she described as a "get to know you" meeting. Defendant Pasque took the
opportunity to inform Plaintiff that some colleagues had described him as a "bully"
in the departmental Climate Study conducted the previous spring by the OIED.

27.    Yet when asked, Defendant Pasque provided just one example of
Plaintiff's alleged bullying – the discussion of the diversity question at the Spring
2016 department meeting.

28.    Plaintiff told Defendant Pasque that he believed asking about survey
methods during a meeting at a major research university could not qualify as
bullying. Defendant Pasque implied that there were other claims about Plaintiff in
the Climate Study, but she did not identify any and refused to describe them, citing
the confidential nature of the Climate Study.

29.    On January 22, 2018, seemingly out of the blue, Plaintiff received an
email from Defendant Pasque that restated the concern about so-called "bullying"
she expressed at their November 2, 2017 meeting and invited Plaintiff to respond.

30.    Defendant Pasque's email alarmed Plaintiff because she seemed to be
trying to establish a paper trail of problematic behavior on his part – behavior that
was, in reality, nothing more than doing his job.

31.    At that time, Plaintiff asked Defendant Pasque whether a copy of the

Climate Study was in his personnel file, and she responded that it was not.

32.    In 2019, Plaintiff requested a copy of his personnel file from NCSU. He was astonished to discover a copy of Defendant Pasque's January 22, 2018 email concerning bullying in his personnel file. Someone at the University had placed a copy in his file without notifying him.

33.    On April 11, 2018, Inside Higher Ed published an article about a faculty search committee chaired by Alyssa Rockenbach, a colleague of Plaintiff's in the Higher Education Program Area.

34.    In the article, anonymous faculty at NCSU complained that Terrell Strayhorn was one of the finalists for the position. Strayhorn was a former professor at The Ohio State University ("OSU") who was accused of using OSU staff to run his side business giving speeches across the country, neglecting his professorial duties to focus on his business, and having an inappropriate relationship with a student. He was terminated from his center director position at OSU, forced to resign his tenured professor position, and paid OSU $29,000 as part of an agreement to leave the university.

35.    According to the article, Rockenbach conducted the search with "unusual secrecy":  for the first time in CED history, resumés for the candidates were shielded from faculty review.

36.    Plaintiff was concerned that Rockenbach cut corners on her vetting of Strayhorn, who is Black, out of a desire to hire a Black scholar whose work focused on racial issues, tying into Plaintiff's broader concern about the abandonment of

rigor in pursuit of a particular vision of social justice even if that meant condoning apparent sexual misconduct.

37.    When the article broke on April 11, 2018, Plaintiff sent the following email to the Higher Education faculty:

> Did you all see this?
>
> http://www.insidehighered.com/news/2018/04/11/anonymous-faculty-members-nc-state-object-job-candidate-who-was-ousted-ohio-state
>
> This kind of publicity will make sure we rocket to number 1 in the rankings. Keep up the good work, Alyssa!

38.    A week later, on April 19, 2018, Defendant Pasque requested a meeting with Plaintiff about his email, at which she repeatedly asked him what his intent was in sending it. In light of the email he had received from Defendant Pasque on January 22, 2018, Plaintiff repeatedly asked Defendant Pasque to explain her specific concerns with the email, which she avoided.

39.    After the meeting, Plaintiff filed a Public Records request to gain a better understanding of the situation, because he was increasingly concerned about the hostility towards him within the department.

40.    He learned that:

a.    On April 11, 2018, Defendant Gaston Gayles forwarded Plaintiff's email to Defendant Pasque, saying "NOT COOL!!!! I am so mad about all of this I could scream!! I can't stay silent about this. It's maddening!" Defendant Pasque's response was completely redacted.

b.    That same day, Rockenbach forwarded Plaintiff's email to Defendants Pasque and Danowitz, and Robinette Kelley, Associate Vice Provost for Equal Opportunity and Equity. At some point Plaintiff's email was also forwarded to Vice Provost for Faculty Affairs Katherine Stewart.

41.    At a follow-up meeting with Plaintiff on April 24, 2018, Defendant Pasque made it known that she had spoken with the administration to find ways to exclude Plaintiff from critical aspects of his job. Specifically, she inquired whether Plaintiff had to remain a member of the Higher Education Program Area or whether he could be a member of the department without a Program Area, a move that would severely marginalize Plaintiff within the department.

42.    This was the first time Defendant Pasque mentioned her desire to eliminate Plaintiff from the Higher Education Program Area.

43.    Because ELPHD still used the Program Area designation to describe both its Master's and Ph.D. programs, see *supra* ¶17, Pasque was effectively proposing to exclude Plaintiff from all Higher Education activities, both Master's and doctoral.

44.    Plaintiff was astonished and dismayed. He told Defendant Pasque that he did not understand why she was pursuing this idea.

45.    Plaintiff left the meeting deeply disturbed. Defendant Pasque seemed intent on driving Plaintiff out of the Higher Education Program Area, and Plaintiff felt that she was pressuring him to leave.

46.    Plaintiff's annual evaluation that year was good, save for a vague

statement that Defendant Pasque expected him, and all faculty, to be "collegial," which through the lens of social justice apparently means to voice no concerns about rigorous administration or hiring. Otherwise, the evaluation was positive.

47.     On September 3, 2018, Plaintiff once again exercised his free speech rights and published a post on his personal blog entitled "ASHE Has Become a Woke Joke." ASHE refers to the Association for the Study of Higher Education. Plaintiff's blog commented on some research a colleague of his had gathered about topics under discussion at the upcoming ASHE conference, which demonstrated that the focus of the conference had shifted from general post-secondary research to a focus on social justice.

48.     Plaintiff's criticism of ASHE generated controversy on social media. For example, a tweet posted on September 8, 2018 by Dr. Juhanna Rogers stated:

> conferences where race, racism, blackness, and women were left off the agenda still in abundance! As for me and the crew we vowed to create the spaces that look different ! @stephen porter maybe you need white spaces. As for ASHE we will be Woke!

49.     This is characteristic of Plaintiff's self-proclaimed "woke" critics. Any dissent from their orthodoxy is equated automatically with racism, misogyny, or worse.

50.     Another tweet thread, by Dr. OiYan Poon, said that Plaintiff's comments reflected "entitlement," "white supremacy," and "dog whistle racial politics." Apparently, Plaintiff's self-proclaimed "woke" critics also believe they possess supersonic hearing that enables them to hear inaudible racist comments

where there are none.

51.   The views of Plaintiff's critics are shared by a number of Defendants in this lawsuit. For example, the Twitter feed of Defendant Pasque contains numerous references to "intersectionality," "white supremacy," and the importance of qualitative rather than quantitative research – the very thing that Plaintiff was criticizing in his "Woke Joke" blog.

52.   Similarly, the Twitter feed of Defendant Gaston Gayles is filled with references to "systemic oppression," "white supremacy," "privilege," and the importance of emphasizing feelings over facts.

53.   As the 2018–2019 academic year opened, Defendant Danowitz met with the Higher Education Program Area faculty and told them they had the opportunity for a potential spousal hire. Universities in the region have an informal agreement to help place one member of an academic couple when they are interested in hiring the other member. The spouse of one of these hires was a well-known post-secondary researcher who was interested in a position with NCSU. Defendant Danowitz instructed the Higher Education Program Area faculty to meet and decide whether to bring this person in for an interview.

54.   Yet Defendant Gaston Gayles suppressed this topic on the Higher Education Program Area agenda, despite Plaintiff and another colleague requesting that the discussion be held as Defendant Danowitz directed.

55.   Instead, Defendant Pasque invited Plaintiff to a Google Hangout meeting on October 15, 2018, with herself, Defendant Gaston Gayles, and two other

individuals. Defendant Pasque characterized this meeting as a "new and exciting opportunity."

56.    The new opportunity Defendant Pasque proposed again involved Plaintiff leaving the Higher Education Program Area – this time, to create a new Higher Education Policy Program Area with Plaintiff, the potential spousal hire, and Defendant Pasque as the only members. This was now the second time in six months that Defendant Pasque proposed Plaintiff leave the Higher Education Program Area, this time citing a different reason.

57.    This was retaliation for Plaintiff's unpopular expression. After all, it was shortly after his April 2018 comments about the Inside Higher Ed article that Defendant Pasque first proposed he leave the Higher Education Program Area. Now, Defendant Pasque was proposing it again in the wake of his controversial blog calling ASHE a "woke joke."

58.    The tenor of the meeting quickly focused on Plaintiff's refusal to leave the Higher Education Program Area and the fact that this would supposedly prevent bringing in the potential spousal hire.

59.    Plaintiff was frustrated and mystified by this, as the Program Area faculty had never met to consider bringing in the spousal hire as directed by Defendant Danowitz, and as Plaintiff had spoken in favor of hiring the person from the beginning.

60.    In frustration at this apparent ambush, Plaintiff said "Give me a fucking break, folks. I was the one who said [the potential spousal hire] should

come. And now I'm the bad guy because I don't want to leave Higher Ed for a non-existent program area."

61.    On October 18, 2018, Plaintiff received a letter from Defendant Pasque chastising him for his use of profanity and his expressions of frustration at the meeting.

62.    On November 7, 2018, Plaintiff received another letter from Defendant Pasque, this time expressing concern about his "collegiality."

63.    In accusing Plaintiff of a lack of collegiality, Pasque emphasized three things, all of which relate directly to Plaintiff's protected speech:

      a.    The results of the 2017 climate study, in which Plaintiff was labeled a "bully" for questioning the utility of a proposed faculty evaluation question on diversity;

      b.    Plaintiff's April 2018 circulation of an article about the checkered past of a finalist for a faculty position in Plaintiff's department; and

      c.    Plaintiff's response to being asked to leave the Higher Education Program Area following his "woke joke" blog.

64.    Pasque's letter threatened that if Plaintiff "fail[s] to repair the relationships among faculty in the Higher Education program" or displays a "lack of collegiality" again, she would remove him from the Higher Education Program Area.

65.    Upon information and belief, Defendant Pasque was laying the pretextual groundwork for involuntarily removing Plaintiff from the Higher

Education Program Area, since he had strenuously objected to the idea the previous two times she had raised it.

66.    One week after receiving Defendant Pasque's letter, Plaintiff learned that the president of ASHE, Dr. Lori Patton Davis, had strongly criticized his "woke joke" blog in her keynote address to the ASHE conference, including putting up a slide with Plaintiff's name and photograph alongside a screenshot of his blog during her speech to several hundred people.

67.    The following Monday, November 19, 2018, Plaintiff received an email from Defendant Pasque informing him that ELPHD graduate students were having "strong reactions" to the keynote and that the department "need[ed] to pay attention to" them. She proposed a "community conversation about ASHE" at which Plaintiff would be expected to address graduate students' concerns about his blog.

68.    Plaintiff requested clarification about the so-called "community conversation," but noted that in the meantime, he would be happy to chat with any students or faculty who had concerns. *Id.*

69.    Defendant Pasque responded that the purpose of the meeting would be to help graduate students reconcile the "great teacher" they knew from NCSU with what they had heard about Plaintiff from the president of ASHE. *Id.*

70.    Plaintiff repeatedly inquired about how many students had raised concerns, and what the nature of their concerns were, but received no answer. Finally, Defendant Pasque admitted to Plaintiff that only two out of about 60 doctoral students spoke with her about the matter. Plaintiff only received one email

from one student about it.

71.    After some additional back-and-forth about how best to address graduate students' concerns, a group of ELPHD faculty who had attended an evening social with students met after the social to discuss Plaintiff's blog post. Plaintiff was excluded from the meeting.

72.    Plaintiff asked that time be set aside in the upcoming January 2019 Higher Education Program Area meeting to discuss whether a public meeting should be held about his blog. Defendant Gaston Gayles did not include the topic on the agenda, and it was never discussed – apparently, the Higher Education Program Area faculty preferred to discuss Plaintiff behind his back.

73.    On February 19, 2019, Plaintiff and Defendant Pasque met to discuss her November 7, 2018 letter.

74.    During that meeting, Defendant Pasque repeatedly expressed her frustration that Plaintiff had not proactively addressed student and faculty concerns about "what happened at ASHE" – namely, the fact that Plaintiff had posted a blog critical of ASHE with which the president of the organization had publicly disagreed, and which had apparently upset a few students.

75.    Pasque cited Plaintiff's lack of proactive action as a further example of his lack of collegiality.

76.    Between February 19, 2019 and July 5, 2019, Plaintiff heard nothing further from Defendant Pasque about these issues.

77.    Then, on Friday, July 5, 2019, in the middle of a holiday weekend,

Plaintiff received his annual evaluation letter from Defendant Pasque.

78.    After noting his accomplishments in the previous year, Defendant Pasque notified Plaintiff that she was unilaterally removing him from the Higher Education Program Area because "the Higher Education faculty were not able to make concerted progress" on resolving issues within the Program Area. This was direct retaliation for Plaintiff's expression of unpopular viewpoints. Pasque also stated that because of the reduced departmental workload, Plaintiff would be expected to teach an extra course. Defendant Pasque noted that Defendant Danowitz was involved in making this decision. *Id.*

79.    Pasque's decision resulted in Plaintiff's near-total exclusion from all Higher Education activities, including doctoral activities.

80.    Moreover, upon information and belief, no other tenured faculty in the College of Education has ever been mandated to teach a fifth course.

81.    In July 2019, Defendant Pasque left NCSU and was replaced as department head by Defendant Lee.

82.    On August 28, 2019, Plaintiff filed an internal grievance contesting his removal from the Higher Education Program Area and the addition of a fifth course to his teaching load.

83.    During the grievance process, Defendant Lee told Plaintiff he would not require him to teach the extra course, but the written requirement remains a part of Plaintiff's personnel file.

84.    Plaintiff's exclusion from the Higher Education Program Area had an

immediate and significant impact on his role in ELPHD. Despite Defendant

Pasque's assurance that Plaintiff would remain involved in the Higher Education

Ph.D. program, her actions effectively erased him from every aspect of the Higher

Education doctoral program.

85.    Defendants Lee and Gaston Gayles barred Plaintiff from attending the

Higher Education Orientation for new Ph.D. students, the Higher Education

welcome cookout, and the Higher Education Retreat, during which the faculty

discussed many issues related to the doctoral program.

86.    Defendants Lee and Gaston Gayles also excluded Plaintiff from the

Diagnostic Advisement Procedure ("DAP") process for second-year Ph.D. students,

severely undermining Plaintiff's role as an advisor to his students.

87.    At the time, Plaintiff was advising three Ph.D. students who were

scheduled to go through the DAP process that year.

88.    The DAP is a high-stakes process; the faculty can decide to remove a

student from doctoral study if they fail the DAP.

89.    NCSU's Higher Education Student Handbook provides that a student's

advisor should be one of two readers reviewing writing samples submitted by

student candidates for the DAP and that after those reviews, there should be a

meeting of all Higher Education faculty members to discuss all students going

through the DAP.

90.    On September 18, 2019 – just one week before the DAP meeting –

Plaintiff reached out to Defendant Lee to express his concern that Defendant

Gaston Gayles was excluding him from the DAP process, both by excluding him from the upcoming DAP meeting and by not assigning him any DAP writing samples to review.

91.     Defendant Lee replied that "I'll work on this right now and get back ASAP." *Id.*

92.     Defendant Lee did not get back to Plaintiff, and the Higher Education faculty met and went through the DAP process, intentionally excluding Plaintiff.

93.     On September 26, 2019, Plaintiff emailed Defendant Lee to ask how he should communicate with his advisees about the DAP, given their expectation that he would have participated in the process. *Id.*

94.     In that email, Plaintiff also expressed his concern over how the department's systematic exclusion of him was affecting his relationship with his advisees:

> I am also unsure how to proceed in terms of my relationships with all of my advisees, not just those involved in yesterday's DAP. Although I officially remain their advisor, in practice my relationship seems to be slowly and involuntarily eroded to the point where, perhaps, I will not be able to function as such in good faith.

95.     On October 3, 2019, Defendant Lee sent an email to Plaintiff's advisees explaining that "the program faculty in the higher education PhD program area of study (PAS) met last week to complete part of the program work on the Diagnostic Advisement Procedure (DAP). Dr. Porter was not in attendance for the review as this portion of the DAP process was completed during another program meeting for which Dr. Porter is not participating." *Id.*

96.     This humiliated Plaintiff, who felt as though his advisees might think he simply did not care enough about their progress in the doctoral program to participate in their DAP process.

97.     On October 23, 2019, Plaintiff met with Defendant Lee to discuss his ongoing concerns about his exclusion from Higher Education Ph.D. activities.

98.     At this meeting, Defendant Lee stated that Plaintiff would be permitted to continue advising doctoral students, but that because of his involuntary exclusion from the Higher Education Program Area, he would likely not be able to participate in meetings concerning the DAP as well as students' dissertation prospectuses.

99.     In response, Plaintiff asked Defendant Lee why any doctoral students would choose Plaintiff as their advisor if Plaintiff could not participate in the DAP process or review their prospectus.

100.    Defendant Lee answered that "I guess that'd have to be something you talk to students about."

101.    Plaintiff expressed his concern to Defendant Lee that "the process is being set up so that when I go up for my post-tenure review a couple of years from now, I'm not going to have any advisees. And then you and Dean Danowitz can say well, we need to strip Porter of tenure and fire him because he's not fulfilling his job duties."

102.    Defendant Lee replied simply "Right, I hear you."

103.    Although Higher Education Program Area meetings – from which

Plaintiff had been removed – were supposed to be devoted to the Master's program, those meetings continually dealt with Ph.D. issues throughout the 2019–2020 academic year. This resulted in Plaintiff's near-total exclusion from Ph.D. activities.

104.    In December 2019, Plaintiff was prohibited from attending the Ph.D. admissions meeting. Because advisees are assigned during that meeting, in this way Defendants ensured that Plaintiff was not assigned any advisees. Plaintiff was also barred from attending a Recruitment Weekend for prospective Ph.D. students in the Spring.

105.    In June 2020, NCSU denied Plaintiff's grievance, finding that it was within Defendant Pasque's discretion to remove him from the Higher Education Program Area and that although he had been excluded from numerous doctoral activities, that had not been Defendant Lee's "intent."

106.    Plaintiff's exclusion from activities central to his job performance continued into the 2020–2021 academic year. In September 2020, Plaintiff emailed Defendant Lee to clarify whether he was still prohibited from attending Higher Education Program Area meetings, which Defendant Lee confirmed.

107.    In October 2020, some ELPHD faculty – led by Defendant Gaston Gayles and Alyssa Rockenbach – proposed a new Ph.D. Program Area of Study in Higher Education Access, Equity, and Justice, the focus of which would be to "undo and dismantle oppressive institutions, systems, and educational structures" and replace them with "learning environments and opportunities that uplift, humanize, and foster freedom and joy for all people, but especially for people who find

themselves on the margins of society today."

108.    The proposal for the new PAS was initially shared with faculty "who expressed an interest in participating." *Id.* Plaintiff was never asked whether he would be interested in participating.

109.    In January 2021, the full ELPHD faculty, including Plaintiff, was presented with a proposal for the new PAS.

110.    All faculty members from the existing Higher Education PAS except for Plaintiff were invited to join the new PAS, which was ultimately named Higher Education Opportunity, Equity, and Justice. Plaintiff's colleague Paul Umbach declined to join the new PAS and remained with Plaintiff in the old Higher Education PAS.

111.    In February 2021, Umbach emailed Defendant Lee that

The lack of transparency, the rush to launch, the inability to get clear answers, the overtaking of recruitment weekend, and the lack of time to plan for the program's future all point to the fact that you and others are aiming to shut down the program. You've bent over backwards to support the new PAS but have done almost nothing to address our continued concerns and directly answer our questions. Given all of this, it seems reasonable to conclude that the aim is to shut down the higher education program and have this new PAS emerge as the new and only higher ed program.

112.    Plaintiff and Umbach further emailed Defendant Lee to express their frustration at having been left out of important Ph.D. recruitment activities. In defiance of all of the facts, Defendant Lee continued to insist that recruitment weekend was only a Master's activity and that no formal offers of admission were being made to the new PAS. *Id.*

113.    This was another blatant effort to effectively force Plaintiff out by siloing him in a now dead-end program area. Had Umbach not declined the invitation to join the new PAS, Plaintiff would have been the only full-time ELPHD faculty member remaining in the old Higher Education PAS.

114.    In March 2021, Defendant Lee informed Plaintiff and Umbach that they could make offers of admission to doctoral candidates they wanted to advise, but that after the offer of admission, those candidates would be encouraged to switch away from Plaintiff and Umbach and into the new PAS *Id.*

115.    With the creation of the new PAS, Plaintiff has effectively been siloed in a PAS that is drained of students and resources. This has severely compromised his ability to perform critical job duties – such as advising Ph.D. students – and has left his future at NCSU in serious jeopardy.

## FIRST CAUSE OF ACTION
### Violation of Plaintiff's Right to Free Speech Under the First and Fourteenth Amendments (42 U.S.C § 1983) – Retaliation

116.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

117.    Plaintiff engaged in constitutionally protected speech and has been subjected to numerous adverse employment actions as a result. These actions have severely limited Plaintiff's ability to perform core requirements of his job, setting the stage for his eventual termination.

118.    Plaintiff's speech involved a matter of public concern: whether the field

of higher education should sacrifice academic rigor in favor of furthering a particular view of "social justice."

119.    Defendant Pasque explicitly cited "communication" within the department in explaining her decision to remove him from the Higher Education Program Area, a decision in which Defendant Danowitz took part.

120.    Defendant Lee not only continued to enforce Defendant Pasque's unconstitutional decision, but, along with Defendant Gaston Gayles, took affirmative steps to further exclude Plaintiff from additional Ph.D. program activities beyond those of the Higher Education Program Area, further restricting his ability to fulfill essential job requirements.

121.    Because of Defendants' actions, Plaintiff has suffered, and continues to suffer, economic injury and irreparable harm. He, therefore, is entitled to an award of monetary damages, including punitive damages, and equitable relief.

122.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff is entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
### Declaratory Judgment and Injunction (28 U.S.C. § 2201, et seq.)

123.    Plaintiff repeats and realleges each of the foregoing allegations in this Complaint as if fully set forth herein.

124.    An actual controversy has arisen and now exists between Plaintiff and

Defendants concerning Plaintiff's rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time as to Count I, above.

125.    Plaintiff desires a judicial determination of his rights against Defendants as they pertain to Plaintiff's rights to speak about matters of public concern without being subjected to adverse employment actions.

126.    To prevent further violation of Plaintiff's constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant to 22 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring Defendants' actions unconstitutional.

127.    Pursuant to 22 U.S.C. § 2202 and Fed. R. Civ. P. 65, this Court should issue a permanent injunction ordering the Defendants to reinstate Plaintiff to the Higher Education Program Area and allow him to join the Higher Education Opportunity, Equity, and Justice PAS, including all of the meetings and activities that follow from such actions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Stephen R. Porter respectfully requests that the Court enter judgment against Defendants and provide Plaintiff with the following relief:

1.    A declaration stating that Defendants' actions violated Plaintiff's right to free speech on matters of public concern;

2.    A permanent injunction requiring Defendants to reinstate Plaintiff to the Higher Education Program Area and to allow him to join the Higher Education

Opportunity, Equity, and Justice PAS, and removing the requirement of a fifth

course from his personnel file;

3.      Monetary damages in an amount to be determined by the Court to

compensate Plaintiff for the deprivation of fundamental rights;

4.      Plaintiff's reasonable attorneys' fees, costs, and other costs and

disbursements in this action pursuant to 42 U.S.C. §§ 1988 and 2000e-5(k); and

5.      Such further and additional relief as the Court shall deem just, proper

and authorized by law, and that the costs of this action be taxed against

Defendants.

### JURY DEMAND: PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE

This 14th day of September 2021.

<div align="right">

/s/ Samantha K. Harris

Samantha K. Harris

ALLEN HARRIS LAW

PO Box 673

Narberth, PA 19072

(860) 481-7899

sharris@allenharrislaw.com

PA Bar No. 90268

Attorney for Plaintiff


/s/ Jonathan A. Vogel

Jonathan A. Vogel

VOGEL LAW FIRM PLLC

6000 Fairview Road

South Park Towers, Suite 1200

Charlotte, NC 28210

(704) 552-3750

Fax: (704) 552-3705

jonathan.vogel@vogelpllc.com

NC Bar No. 34266

Local Civil Rule 83.1(d) Counsel for Plaintiff

</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## CIVIL ACTION NO: 5:21-cv-00365-BO

| | |
|---|---|
| STEPHEN R. PORTER, PH.D., | |
|      Plaintiff, | |
| v. | **DEFENDANTS' MOTION TO DISMISS** |
| | **PLAINTIFF'S COMPLAINT** |
| BOARD OF TRUSTEES OF NORTH CAROLINA STATE UNIVERSITY, W. RANDOLPH WOODSON, MARY ANN DANOWITZ, JOY GASTON GAYLES, JOHN K. LEE, AND PENNY A. PASQUE, individually and in their official capacities, | **Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6)** |
|      Defendants. | |

NOW COME Defendants Board of Trustees of North Carolina State University, W. Randolph Woodson, Mary Ann Danowitz, Joy Gaston Gayles, John K. Lee, and Penny A. Pasque (collectively "Defendants"), and respectfully move that Plaintiff's Complaint and all claims therein be dismissed pursuant to Rule 12(b)(1), (2), and (6) of the Federal Rules of Civil Procedure based upon failure of the Complaint to state a claim upon which relief may be granted, lack of jurisdiction, and lack of standing.

In support of this Motion, Defendants state that Plaintiff's claims fail as a matter of law and should be dismissed based upon the following grounds and for the reasons set forth in the Memorandum of Law being submitted by Defendants contemporaneously with this Motion wherein Defendants' legal arguments and authorities are set forth:

1.    Plaintiff's official capacity claims against Defendants are barred by sovereign immunity and Eleventh Amendment immunity and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6).

2.    The Complaint should be dismissed in its entirety against Defendants Board of Trustees and Woodson because Plaintiff has not asserted any claims or allegations of wrongful conduct against these Defendants, and therefore, all claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

3.    Plaintiff's Complaint fails to state a freedom of speech retaliation claim against Defendants pursuant to the First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 ("Section 1983"), and this claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

4.    Plaintiff's individual capacity claims against Defendants Danowitz, Gayles, Lee, and Pasque are barred by qualified immunity and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

5.    Plaintiff's Complaint fails to sufficiently state a claim for declaratory judgment relief, and, therefore, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

6.    Plaintiff's Complaint fails to sufficiently state a claim for permanent injunctive relief, and, therefore, it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

7.    Plaintiff's Complaint fails to sufficiently state that Plaintiff is entitled to any relief requested in the Complaint and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), (2), and (6).

WHEREFORE, based on the above; Exhibit A (a copy of the September 3, 2018, blog post)[1] attached hereto; and the arguments and legal authorities set forth in Defendants' Memorandum of Law, Defendants respectfully request that Defendants' Motion to Dismiss be allowed and that Plaintiff's Complaint, and all claims therein, be dismissed with prejudice.

Respectfully submitted this the 23rd day of November, 2021.

JOSHUA H. STEIN
Attorney General

/s/Kari R. Johnson

---

[1] "[A] court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint."). See Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999), see also Philips v. Pitt County Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009)(holding that documents attached to a Rule 12(b)(6) motion can be considered where the documents are integral to the complaint), Am. Chiropractic v. Trigon Healthcare, 367 F.3d 212, 234 (4th Cir. 2004) (permitting the consideration of a written agreement attached to the 12(b)(6) motion to dismiss because the agreement was referenced in the complaint). Here, Plaintiff expressly refers to and relies on the September 3, 2018, blog post. (D.E. 1 ¶47).

2

Kari R. Johnson
Special Deputy Attorney General
N.C. State Bar No. 16033
E-mail: kjohnson@ncdoj.gov

/s/Vanessa N. Totten
Vanessa N. Totten
Special Deputy Attorney General
N.C. State Bar No. 27905
E-mail: vtotten@ncdoj.gov

N.C. Department of Justice
P.O. Box 629
Raleigh, NC 27602
T: (919) 716-6920
F: (919) 716-6764

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing **DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered CM/ECF users, including Samantha K. Harris, <u>sharris@allenharrislaw.com</u>, and Jonathan A. Vogel, <u>jonathan.vogel@vogelpllc.com</u>.

Respectfully submitted this the <u>23rd</u> day of November, 2021.

<div style="margin-left:40%">

JOSHUA H. STEIN
Attorney General

<u>/s/Vanessa N. Totten</u>
Vanessa N. Totten
Special Deputy Attorney General
State Bar No. 27905
E-mail: vtotten@ncdoj.gov

N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6920
Fax: (919) 716-6761

*Counsel for Defendants*

</div>

4

# ASHE HAS BECOME A WOKE JOKE

September 3, 2018  /  1 Min Read

A colleague sent this to me. They searched the latest Association for the Study of Higher Education (ASHE) conference program for the following terms, to see how many sessions came up:

qualitative = 74

identity = 69

diversity = 46

inclusion = 27

oppress = 23

critical race = 22

privilege = 21

quantitative = 19

student affairs = 16

consciousness = 15

social justice = 13

regression = 13

white supremacy = 9

propensity score = 6

logistic regression = 4

regression discontinuity = 3

quasi-experimental = 3

econometric = 1

Exhibit A

Case 5:21-cv-00365-BO    Document 15-1    Filed 11/23/21    Page 1 of 2

J.A. 037

event history = 1

HOME     PAPERS     TEACHING     BLOG     RESEARCH     CONSULTING     ABOUT     CONTACT     ≡
                                          METHODS

hierarchical linear = 0

quantile = 0

multinomial logistic = 0

I prefer conferences where 1) the attendees and presenters are smarter than
me and 2) I constantly learn new things. That's why I stopped attending
ASHE several years ago and switched to AEFP.

➕

AEFP          ASHE          social justice

https://stephenporter.org/ashe-has-become-a-woke-joke/                                        2/5

J.A. 038

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-365-BO

STEPHEN R. PORTER, PH.D.,               )
                                        )
          Plaintiff,                    )
                                        )
v.                                      )          O R D E R
                                        )
BOARD OF TRUSTEES OF NORTH              )
CAROLINA STATE UNIVERSITY, W.           )
RANDOLPH WOODSON, MARY ANN              )
DANOWITZ, JOY GASTON GAYLES,            )
JOHN K. LEE, and PENNY A. PASQUE,       )
individually and in their official capacities, )
                                        )
          Defendants.                   )

This cause comes before the Court on defendants' motion to dismiss. Plaintiff has

responded, defendants have replied, and in this posture the matter is ripe for ruling. Plaintiff has

also sought leave to file a sur-reply in opposition to the motion to dismiss, which defendants

oppose. For the reasons that follow, defendants' motion to dismiss is granted and this action is

dismissed.

BACKGROUND

Plaintiff initiated this action by filing a complaint on September 14, 2021. Plaintiff alleges

claims against the Board of Trustees of North Carolina State University, the Chancellor of North

Carolina State University (NCSU), the Dean of NCSU's College of Education, a professor and

program coordinator in the Department of Educational Leadership, Policy, and Human

Development (Dept. of Educational Leadership) at NCSU, and the current and prior heads of the

Dept. of Educational Leadership. Plaintiff alleges that defendants violated plaintiff's right to free

J.A. 039

speech under the First and Fourteenth Amendments and seeks damages, a declaratory judgment, and a permanent injunction. *See* 42 U.S.C. § 1983; 22 U.S.C. § 2201.

Plaintiff alleges as follows in his complaint. [DE 1]. Plaintiff was hired by NCSU in 2011 as a tenured professor in the Dept. of Educational Leadership. *Id.* ¶ 13. Plaintiff was hired to teach courses in graduate-level statistics and research methods in the College of Education, of which the Dept. of Educational Leadership is a part. *Id*. When plaintiff was hired he joined the Higher Education Program Area within the Dept. of Educational leadership. *Id*. The Dept. of Educational Leadership offers both a master's degree and a Ph.D. and does not offer degrees to undergraduate students. *Id.* ¶ 14. While at NCSU plaintiff has had "limited involvement" with the master's degree program, has no master's degree advisees, and does not attend events which are related only to the master's degree. *Id.* ¶ 15.

In 2015, the College of Education faculty voted to create the Scholar Leader Ph.D. program. *Id.* ¶ 16. As a part of this change, each Ph.D. program within the College of Education continues to have its own program-specific courses, but all College of Education Ph.D. students take common research methods and Scholar Leader courses. *Id.* All Ph.D. programs are located within a Program Area of Study, which is distinct from a Program Area. *Id.* ¶ 17. In essence, separate tracks were created for master's degree and Ph.D. students, but plaintiff alleges that the Dept. of Educational Leadership ignored these distinctions and continued to address both master's and Ph.D. matters within the original Program Areas. *Id.*

Plaintiff alleges that, prior to suffering adverse employment action, he spent "considerable time" on Higher Education Ph.D. activities, including advising Higher Education Ph.D. students, serving on Higher Education Ph.D. committees, and actively recruiting prospective Ph.D. students. *Id.* ¶ 18. Plaintiff further alleges that he has been outspoken in recent years about his concern

2

regarding the focus on "so-called 'social-justice' affecting academia in general" and "his concern that the field of higher education study is abandoning rigorous methodological analysis in favor of results-driven work aimed at furthering a highly dogmatic view of 'diversity,' 'equity,' and 'inclusion.'" *Id.* ¶ 19.

Plaintiff alleges that defendants retaliated against him for exercising his right to free speech, specifically identifying three statements or communications that he made in 2016-2018.

In the spring of 2016, plaintiff alleges that he expressed concerns at a department meeting about a proposal to add a question about diversity on student course evaluations. *Id.* ¶ 20. Plaintiff describes the discussion as amicable but notes that the incident was later referenced in a May 2017 departmental report by NCSU's Office of Institutional Equity and Diversity wherein plaintiff was labeled as a "bully." *Id.* ¶¶ 23-24. Defendant Pasque became head of the Dept. of Educational Leadership at the beginning of academic year 2017-18 and discussed the report with plaintiff during a meeting in November 2017. *Id.* ¶¶ 25-26. In January 2018, defendant Pasque emailed plaintiff restating the concern regarding "bullying" and invited plaintiff to respond. *Id.* ¶ 29. Pasque's email was later included in plaintiff's personnel file without his knowledge. ¶ 32.

In April 2018, the journal *Inside Higher Ed* published an article about a faculty search committee at NCSU, which was chaired by one of plaintiff's colleagues, Alyssa Rockenbach. The search committee had included as a finalist for a faculty position a professor from another university who had been terminated by that university after the professor allegedly ran a side business which he staffed with university staff members, neglected his professorial duties, and had an inappropriate relationship with a student. *Id.* ¶¶ 33-34. Plaintiff was concerned that his NCSU colleague had "cut corners" in vetting the candidate "out of a desire to hire a Black scholar whose work focused on racial issues". *Id.* ¶ 36. After the article was published plaintiff sent an email to

3

the Higher Education faculty linking to the article and stating: "Did you all see this? . . . This kind

of publicity will make sure we rocket to number 1 in the rankings. Keep up the good work, Alyssa!"

*Id.* ¶ 37.

Defendant Pasque met with plaintiff about the email a week later, asking plaintiff about his

intent in sending the email. *Id.* ¶ 38. Plaintiff later learned that defendant Gayles had forwarded

plaintiff's email to Pasque with a message "NOT COOL!!! I am so mad about all of this I could

scream!! I can't stay silent about this. It's maddening!" *Id.* ¶ 40. Plaintiff also learned that

Rockenbach had forwarded plaintiff's email to defendants Pasque and Danowitz as well as the

Associate Vice Provost for Equal Opportunity and Equity. *Id.* During a follow up meeting with

defendant Pasque on April 24, 2018, plaintiff alleges that Pasque inquired as to whether plaintiff

had to remain a member of the Higher Education Program Area or whether he could be a member

of the department without a program area. *Id.* ¶ 41. Plaintiff received a good annual evaluation that

year, with a notation that plaintiff, and all faculty, were expected to be collegial. *Id.* ¶ 46.

Plaintiff alleges that on September 3, 2018, he once again exercised his right to free speech

when he published a post on his personal blog entitled "ASHE Has Become a Woke Joke." *Id.* ¶

47. Plaintiff's post commented on research a colleague of his had gathered about topics for

discussion at the upcoming ASHE (Association for the Study of Higher Education) conference;

this research demonstrated that the focus of the conference had shifted from general, post-

secondary research to social justice. *Id.* Plaintiff's blog post generated controversy on social media.

*Id.* ¶§ 48-52.

At the start of the 2018-2019 academic year, defendant Danowitz met with Higher

Education Program Area faculty, including plaintiff, alerting them to the possibility of a spousal

hire.[1] *Id.* ¶ 53. The spousal candidate was a well-known post-secondary researcher interested in an NCSU position. *Id.* Instead of discussing the candidate as planned at a Higher Education Program Area faculty meeting, defendant Pasque invited plaintiff to a Google Hangout meeting on October 15, 2018, to which defendant Gayles and two other people were also invited. *Id.* ¶ 55. Pasque proposed that plaintiff leave the Higher Education Program Area and join a new Higher Education Policy Program Area with plaintiff, the potential spousal hire, and Pasque as the members. *Id.* ¶ 56. Plaintiff alleges that this was the second time in six months that Pasque had suggested plaintiff leave the Higher Education Program Area and that it was in retaliation for plaintiff's unpopular speech. *Id.* ¶¶ 56-57. Plaintiff alleges that the Google meeting focused on plaintiff's refusal to leave the Higher Education Program Area and the impact on the ability to bring in the spousal hire. *Id.* ¶ 58. Plaintiff stated "Give me a f****** break, folks. I was the one who said [the potential spousal hire] should come. And now I'm the bad guy because I don't want to leave Higher Ed for a non-existent program area." *Id.* ¶ 60. Plaintiff received a letter from Pasque on October 18, 2018, chastising him for his use of profanity and expression of frustration at the meeting. *Id.* ¶ 62.

Plaintiff received another letter from Pasque on November 7, 2018, expressing concern about plaintiff's collegiality. *Id.* ¶ 63. The letter highlighted the 2017 climate study which labeled plaintiff as a bully, plaintiff's circulation of the *Inside Higher Ed* article, and plaintiff's use of profanity during the October 2018 meeting. *Id.* ¶¶ 63. Pasque's letter indicated that if plaintiff did not repair the relationship among Higher Education Program Area faculty or continued to display a lack collegiality he would be removed from the Higher Education Program Area. *Id.* ¶ 64.

---

[1] A spousal hire is described by plaintiff as an informal agreement among universities in the area to help place one member of an academic couple when there is an interest in hiring the other member. *Id.* ¶ 53.

5

On November 19, 2018, plaintiff received an email from Pasque about student reactions to the ASHE conference keynote address, which addressed plaintiff's "woke joke" blog post. *Id.* ¶ 66-67. Pasque proposed a community conversation during which plaintiff would be expected to address graduate students' concerns to help students reconcile the "great teacher" they knew with what they had heard about plaintiff from the ASHE address. *Id.* ¶¶ 67-69. Plaintiff later discovered that only two of approximately sixty students had spoken with Pasque about the ASHE matter and that an informal discussion regarding the matter had taken place with Dept. of Educational Leadership faculty after an evening social with students. *Id.* ¶ 71. Plaintiff sought to have the issue added to a January 2019 Higher Education Program Area meeting but it was not. *Id.* ¶ 72. However, in February 2019, plaintiff and Pasque again met and Pasque repeatedly expressed her frustration that plaintiff had not addressed the ASHE matter. *Id.* ¶ 73-74.

On July 5, 2019, plaintiff received his annual evaluation letter and was informed that he had been removed from the Higher Education Program Area because Higher Education faculty had not been able to make "concerted progress" on resolving issues within the Program Area. *Id.* ¶ 78. Plaintiff would also be expected to teach an extra, fifth course. In July 2019, Pasque left NCSU and was replaced by Defendant Lee. *Id.* ¶ 81. Lee informed plaintiff he would not be required to teach an extra course following plaintiff's filing of an internal grievance on August 28, 2019, contesting his removal from the Higher Education Program Area and the addition of an extra course to his workload. *Id.* ¶ 82-83. The requirement that plaintiff teach a fifth course was not, however, removed from plaintiff's personnel file. *Id.* ¶ 83.

Plaintiff alleges that as a consequence of being removed from the Higher Education Program Area, he was barred from attending the Higher Education Orientation for new PhD. students, the Higher Education welcome cookout, and the Higher Education retreat; plaintiff also

6

alleges that he was excluded from the Diagnostic Advisement Procedure process for second-year Ph.D. students, including for his own advisees. *Id.* ¶¶ 85-92.

Plaintiff later expressed concern to defendant Lee that he was being set up so that when he was up for post-tenure review in a few years, he would not have any advisees and could be stripped of tenure and fired for not fulfilling his job duties. *Id.* ¶ 101. Plaintiff alleges that in December 2019 he was prohibited from attending a Ph.D. admissions meeting, which is when advisees are assigned, and was further barred from attending a Spring 2020 Ph.D. recruitment weekend. *Id.* ¶ 104. Plaintiff's internal grievance was denied in June 2020. *Id.* ¶ 105.

Finally, in October 2020, some Dept. of Educational Leadership faculty proposed a new Ph.D. Program Area of Study in Higher Education Access, Equity, and Justice. *Id.* ¶ 107. Plaintiff was not asked whether he would be interested in participating in this new Program Area of Study and all faculty members with the exception of plaintiff were invited to join. *Id.* ¶¶ 108-110. Plaintiff and one other faculty member did not join the new Program Area and remained in the Higher Education Program Area of Study. *Id.* ¶ 110. They were informed in March 2021 that they could make offers of admission to doctoral candidates but that those candidates would be encouraged to switch to the new Program Area of Study once they arrived. *Id.* ¶ 114.

<div align="center">DISCUSSION</div>

Defendants have moved to dismiss plaintiff's complaint in its entirety for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[2]

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. "Subject-matter jurisdiction cannot be forfeited or waived and should be

---

[2] The Court, in its discretion, allows plaintiff's motion for leave to file a sur-reply [DE 24]. The proposed sur-reply filed at [DE 24-1] is deemed filed.

<div align="center">7</div>

<div align="center">J.A. 045</div>

.

considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) (citation omitted).

When subject-matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction

to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647–50 (4th Cir. 1999). When a

facial challenge to subject-matter jurisdiction is raised, the facts alleged by the plaintiff in the

complaint are taken as true, "and the motion must be denied if the complaint alleges sufficient

facts to invoke subject-matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.

2009). The Court can consider evidence outside the pleadings without converting the motion into

one for summary judgment. *See, e.g., Evans*, 166 F.3d at 647.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478

U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should

accept as true all well-pleaded allegations and should view the complaint in a light most favorable

to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must

allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v.

Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere

recitals of the elements of a cause of action supported by conclusory statements do not suffice.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual

allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible."

*Twombly*, 550 U.S. at 570.

A.     *Board of Trustees and official capacity claims*

Plaintiff does not appear to dispute that his claims for damages against the Board of

Trustees and the individual defendants in their official capacities are barred by sovereign and

Eleventh Amendment immunity. *See Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356,

8

363 (2001); *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1138 (4th Cir. 1990); *see also Ballenger v. Owens*, 352 F.3d 842, 845 (4th Cir. 2003). In his response to the motion to dismiss, however, plaintiff argues that he may nonetheless obtain prospective relief against the defendants under *Ex Parte Young*, 209 U.S. 123 (1908). Under *Ex Parte Young*, "federal courts may exercise jurisdiction over claims against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998).

With one exception, the relief plaintiff seeks is not prospective. In his complaint, plaintiff seeks, in addition to damages and attorney fees, (1) a declaration that defendants' actions violated his First Amendment right to speak on matters of public concern and (2) a permanent injunction requiring defendants to reinstate plaintiff to the Higher Education Program Area; allow him to join the Higher Education Opportunity, Equity, and Justice Program Area of Study; and remove the requirement that he teach a fifth course from his personnel file. [DE 1].

Where the effect of a declaratory judgment and injunction would be to "undo accomplished state action[,]" the *Ex Parte Young* exception does not apply. *Paraguay*, 134 F.3d at 628. In his sur-reply, plaintiff clarifies that he seeks "prospective relief against the continuation of the past violation." [DE 24-1]. However, "even though the consequences of any past violation may persist, invoking those effects does not transform past state action into an ongoing violation." *Jemsek v. Rhyne*, 662 F. App'x 206, 211 (4th Cir. 2016). Accordingly, plaintiff's requests for injunctive relief regarding his permission to join the new Higher Education Opportunity, Equity, and Justice Program Area of Study and the removal of the requirement that he teach a fifth course are not prospective, and *Ex Parte Young* does not provide an exception to Eleventh Amendment immunity.

9

Plaintiff's request for 'reinstatement', however, to the Higher Education Program Area may well state a claim for prospective injunctive relief. "[R]einstatement is a form of prospective relief, [and] the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies." *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013); *see also Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 243 (4th Cir. 2020) (whether in the context of termination or demotion "claims for reinstatement to previous employment meet the *Ex Parte Young* exception."). However, as discussed below, plaintiff has failed to state a First Amendment retaliation claim.

B.     *First Amendment retaliation*

"The First Amendment protects not only the affirmative right to speak, but also the 'right to be free from retaliation by a public official for the exercise of that right.'" *Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011) (citation omitted). Retaliation in violation of the First Amendment is actionable because it tends to chill the exercise of constitutional rights. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005). However, "[w]here there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation. Thus, a showing of adversity is essential to any retaliation claim." *Am. C.L. Union of Maryland, Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993). If a plaintiff has alleged adverse employment action, the following must be determined in order for a public employee to prove a claim for First Amendment retaliation:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; and (3) whether the employee's speech was a substantial factor in the employee's [adverse employment action].

10

*McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998); *see also Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 654 (4th Cir. 2017). "The causation requirement is 'rigorous' in that the protected expression must have been the 'but for' cause of the adverse employment action alleged." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 318 (4th Cir. 2006)

What constitutes a materially adverse action for a Title VII retaliation claim is "similar to the standard for demonstrating an adverse action in the First Amendment retaliation context." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 697 n.12 (4th Cir. 2018). Whether an action is adverse is an objective standard, which will be satisfied if the retaliatory conduct would "deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine*, 411 F.3d at 500.

Termination, demotion, loss of compensation, and loss of opportunity for promotion are well-settled materially adverse employment actions. *See Ridpath*, 447 F.3d at 316; *Boone v. Goldwin*, 178 F.3d 253, 256-57 (4th Cir. 1999). The denial of opportunity for professional advancement may also constitute materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). The adverse actions about which plaintiff complains are his removal from the Higher Education Program Area, being told he would have to teach a fifth course (without actually being required to teach a fifth course), and not being invited to join a recently formed Ph.D. Program Area of Study.

Plaintiff remains a tenured professor in the NCSU College of Education and a member of the Higher Education Ph.D. Program Area of Study. He has not alleged he has suffered any diminution in pay or responsibility or that he has lost the opportunity for promotion. At bottom, plaintiff alleges that the decision to remove him from the Higher Education Program Area will, in the future, result in his being unable to obtain advisees which will leave his future at NCSU in

11

J.A. 049

doubt. Such adverse consequence, however, is speculative. Plaintiff has not alleged that he does not currently have any advisees or that his tenure status is now at risk. Accordingly, he has failed to plausibly allege that any defendant took materially adverse action against him in retaliation for any protected speech.

Moreover, plaintiff has failed to plausibly allege that retaliation for engaging in protected speech was the proximate cause of any allegedly adverse action by defendants. Plaintiff identifies three instances of speech for which he was allegedly retaliated against. The last instance took place eleven months prior to his removal from the Higher Education Program Area in July 2019, which is too long to demonstrate that temporal proximity would tend to show that the protected activity was "the substantial motivating factor in the adverse action." *Penley*, 876 F.3d at 657 (eight to nine months between speech and adverse action is insufficient to demonstrate causation based on temporal proximity).

The complaint further fails to otherwise show a causal connection between the allegedly protected speech and any adverse action. As argued by defendants, the complaint reveals that plaintiff had been described as a bully in a department Climate Study completed in 2017 and that plaintiff made comments about and to other faculty members which could be perceived as unprofessional or disrespectful. *See* [DE 1 ¶¶ 24, 37, 60]. Finally, plaintiff's complaint alleges that defendant Pasque had repeatedly expressed concern regarding plaintiff's collegiality and his failure to repair relationships among faculty. *Id.* ¶¶ 46, 61, 62, 75. Even construing the facts and inferences in the light most favorable to plaintiff, the complaint fails to plausibly allege that any protected speech identified by plaintiff was the substantial motivating factor in the decision to remove him from the Higher Education Program Area or any other allegedly adverse action.

12

J.A. 050

Because plaintiff has failed to plausibly allege that he has suffered adverse action or that any allegedly protected speech was the 'but for' cause of any alleged adverse employment action, he cannot state a claim for retaliation in violation of the First Amendment.[3]

The defendants named in their individual capacity further contend they are entitled to qualified immunity. Qualified immunity shields government officials from liability for statutory or constitutional violations so long as they can reasonably believe that their conduct does not violate clearly established law. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). A court employs a two-step procedure for determining whether qualified immunity applies that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010). A court may exercise its discretion to decide which step of the analysis to decide first based on the circumstances presented. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed above, the Court first holds that plaintiff has failed to plausibly allege a First Amendment retaliation claim, and thus has failed to allege that a constitutional violation occurred. However, even assuming, without deciding, that plaintiff has sufficiently alleged such a claim, the individual defendants would be entitled to qualified immunity.

A clearly established right requires existing precedent which places "the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (noting a case on point is not required). Moreover, the right must not be defined at a high level of generality and must instead focus on the particular conduct at issue. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citing *al-Kidd*, 563 U.S. at 742).

---

[3] The Court thus declines to address whether plaintiff was speaking as a citizen upon a matter of public concern and whether plaintiff's interest in speaking outweighed the NCSU's interest.

13

Although "the right to of a public employee to speak as a citizen on matters of public concern—is clearly established and something a reasonable person in the Defendants' position should have known was protected[,]" *Adams*, 640 F.3d at 566, "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, yet difficult to apply, and not yet well defined." *Pike v. Osborne*, 301 F.3d 182, 185 (4th Cir. 2002) (citing *DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir.1995); and *McVey,* 157 F.3d at 277).

*Adams*, the sole case on which plaintiff relies to oppose qualified immunity, involved an assistant professor's denial of promotion to full professor because of his views which were published in books and stated on television and radio programs. Here, plaintiff's speech for which he alleges he was retaliated against included his expression of concern about the inclusion of a diversity question on student course evaluations during a faculty meeting, his email to faculty regarding the school's rankings, and a personal blog post titled "ASHE Has Become a Woke Joke". Plaintiff has identified no case, nor is the Court aware of any, where on similar facts a court concluded that the constitutional or statutory right was clearly established. Accordingly, the Court concludes that the right to be free from First Amendment retaliation based upon these facts was not clearly established, and the individual defendants are alternatively entitled to qualified immunity for claims against them in their individual capacity.

In sum, plaintiff has failed to sufficiently allege an adverse action which would support his First Amendment retaliation claim, in large part because any harm he allegedly will suffer is speculative. Plaintiff has further failed to sufficiently allege that the speech identified in his complaint was the "but for" cause of any alleged retaliation, and the individual defendants are otherwise entitled to qualified immunity.

CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion to dismiss [DE 15] is GRANTED and plaintiff's complaint is DISMISSED in its entirety. Plaintiff's motion for leave to file a sur-reply [DE 24] is GRANTED. The clerk is directed to close the case.

SO ORDERED, this _15_ day of June 2022.

_Terrence Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

15

J.A. 053

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| STEPHEN R. PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JUDGMENT** |
| | ) | 5:21-CV-365-BO |
| BOARD OF TRUSTEES OF NORTH | ) | |
| CAROLINA STATE UNIVERSITY, | ) | |
| W. RANDOLPH WOODSON, MARY ANN | ) | |
| DANOWITZ, JOY GASTON GAYLES, | ) | |
| JOHN K. LEE, and PENNY A. PASQUE, | ) | |
| individually and in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**Decision by Court.**
This cause comes before the Court on defendants' motion to dismiss. Plaintiff has responded, defendants have replied, and in this posture the matter is ripe for ruling. Plaintiff has also sought leave to file a sur-reply in opposition to the motion to dismiss, which defendants oppose.

**IT IS ORDERED, ADJUDGED AND DECREED** that defendants' motion to dismiss [DE 15] is GRANTED and plaintiff's complaint is DISMISSED in its entirety. Plaintiff's motion for leave to file a sur-reply [DE 24] is GRANTED.

This case is closed.

**This judgment filed and entered on June 17, 2022, and served on:**
Samantha Harris (via CM/ECF Notice of Electronic Filing)
Jonathan Vogel (via CM/ECF Notice of Electronic Filing)
Kari Johnson (via CM/ECF Notice of Electronic Filing)
Vanessa Totten (via CM/ECF Notice of Electronic Filing)

PETER A. MOORE, JR., CLERK

June 17, 2022

  /s/Lindsay Stouch
By: Deputy Clerk

J.A. 054

United States District Court for the Eastern District of
North Carolina

Docket No. 5:21-cv-365

| | |
|---|---|
| Stephen Porter, Plaintiff<br><br>v.<br><br>Board of Trustees of North Carolina State University, et al., Defendants | Notice of Appeal |

Stephen Porter appeals to the United States Court of Appeals for the Fourth Circuit from the final judgment entered on June 17, 2022.

/s/ Jonathan Vogel
*Attorney for* Stephen Porter
VOGEL LAW FIRM PLLC
6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, NC 28210
704.552.3750
jonathan.vogel@vogelpllc.com
NC State Bar No. 34266
*Local Civil Rule 83.1(d)*
*Counsel for Plaintiff*

/s/ Samantha K. Harris
*Attorney for Stephen Porter*
ALLEN HARRIS PLLC
PO Box 673
Narberth, PA 19072
860.345.5310
sharris@allenharrislaw.com

J.A. 055

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that all parties have been served with a copy of

**NOTICE OF APPEAL** by electronically filing the foregoing with the Clerk by using the

CM/ECF system.

<div align="right">

*/s/ Jonathan A. Vogel*
Jonathan A. Vogel
VOGEL LAW FIRM PLLC
6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, NC 28210
Telephone:704.552.3750
Facsimile:704.552.3705
jonathan.vogel@vogelpllc.com
NC State Bar No. 34266
*Local Civil Rule 83.1(d) Counsel for Plaintiff*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 29, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

N/A

<u>*/s/ Samantha K. Harris*</u>
Samantha K. Harris
Allen Harris PLLC
PO Box 673
Narberth, PA 19072
(860) 345-5310
sharris@allenharrislaw.com

*Attorney for Plaintiff-Appellant Stephen Porter*