No. 22-1712

# In the United States Court of Appeals for the Fourth Circuit

STEPHEN PORTER,

*Plaintiff-Appellant*,

v.

BOARD OF TRUSTEES OF N. C. STATE UNIVERSITY, et al.,

*Defendants-Appellees*.

**On Appeal From The United States District Court
For The Eastern District Of North Carolina At Raleigh**

**REPLY BRIEF OF APPELLANT STEPHEN PORTER**

JONATHAN A. VOGEL
VOGEL LAW FIRM PLLC
6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, NC 28210
(704) 552-3750
jonathan.vogel@vogelpllc.com

SAMANTHA K. HARRIS
ALLEN HARRIS PLLC
PO Box 673
Narberth, PA 19072
(860) 345-5310
sharris@allenharrislaw.com

*Attorneys for Plaintiff-Appellant Stephen Porter*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................. i

TABLE OF AUTHORITIES ...................................................... ii

ARGUMENT ......................................................................... 1

  I.    INTRODUCTION ................................................... 1

  II.   APPELLEES ATTEMPT TO PLEAD AN ALTERNATIVE SET OF FACTS ...... 2

      A.  The "Woke Joke" blog post clearly discussed social justice ....... 2

      B.  Appellant pleaded facts indicating Ph.D. activities were taking place within the Higher Education Program Area ...................... 4

      C.  Appellant adequately pleaded that NCSU's actions have harmed his career ................................................................... 6

  III.  APPELLANT SUFFERED AN ADVERSE EMPLOYMENT ACTION .............. 7

  IV.  THERE WAS A CAUSAL CONNECTION BETWEEN THE ADVERSE EMPLOYMENT ACTION AND APPELLANT'S PROTECTED SPEECH .......... 10

      A.  Appellant's speech was protected ............................... 10

      B.  There was a causal connection between Appellant's protected speech and the adverse employment actions .............................. 13

  V.   THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY ...................................................................... 14

CONCLUSION ....................................................................... 15

CERTIFICATE OF COMPLIANCE ............................................. 16

CERTIFICATE OF SERVICE .................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Adams v. Anne Arundel County Pub. Sch.*, 789 F.3d 422 (4th Cir. 2015) ...............10

*Adams v. Trustees of the University of North Carolina – Wilmington*, 640 F.3d 550 (4th Cir. 2011) ....................................................................................10, 11, 14, 15

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................1

*Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999).................................................8, 9, 10

*Brooks v. Arthur*, 685 F.3d 367 (4th Cir. 2012)...................................................12, 13

*Brooks v. University of Wisconsin Board of Regents*, 406 F.3d 476 (7th Cir. 2005).......................................................................................................................11, 12

*Burlington & N. Santa Fe Ry. v. White*, 548 U.S. 53 (2006) ................................8, 9

*Cooksey v. Futrell*, 721 F.3d 226 (4th Cir. 2014).....................................................1

*Csicsmann v. Sallada*, 211 Fed. Appx. 163 (4th Cir. 2006)....................................10

*Garcetti v. Ceballos*, 547 U.S. 410 (2006)..........................................................10, 11

*Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007) .........................10

*James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371 (4th Cir. 2004)................9, 10

*Jyachosky v. Winter*, 343 Fed. Appx. 871 (4th Cir. 2009) .......................................10

*McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998) .........................................................11

## Rules

Fed. R. Civ. P. 12(b)(6) ...............................................................................................2

# ARGUMENT

## I.   INTRODUCTION

In reviewing the dismissal of a complaint, this Court must "assume all well-pled facts to be true and draw all reasonable inferences in favor of the plaintiff." *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2014). Ignoring this well-established standard, Appellees instead ask this Court to accept a different set of facts from those pleaded by Appellant Stephen Porter—and to construe those facts in their favor. For example, although Appellant's Complaint clearly alleges that he was excluded from meetings at which important discussions regarding the Ph.D. program took place, Appellees claim that these meetings instead concerned the Master's program and ask this Court to simply accept that at face value.

Moreover, Appellees treat this case as though it had been decided on summary judgment, rather than at the motion to dismiss stage. Citing almost exclusively summary judgment cases, Appellees argue that Dr. Porter has not presented enough evidence to support his case. But this was not a summary judgment decision, and Dr. Porter has pleaded more than enough facts to plausibly allege that he suffered adverse employment actions in retaliation for his expressions of opinion on matters of public concern. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.    APPELLEES ATTEMPT TO PLEAD AN ALTERNATIVE SET OF FACTS.

Rather than address Dr. Porter's arguments concerning the district court's ruling, Appellees essentially try to re-argue their motion to dismiss before this Court by presenting an alternative set of facts to those pleaded in Dr. Porter's Complaint. Appellees turn the 12(b)(6) standard of review on its head, introducing a new set of facts from those pleaded in the Complaint, and then asking the Court to construe those new facts in the light most favorable to themselves.

### A.    The "Woke Joke" blog post clearly discussed social justice.

Appellees argue that Dr. Porter's blog post entitled "ASHE Has Become a Woke Joke" was "devoid of any substantive comment regarding a purported concern with 'social justice.'" Brief of Appellees, Doc. No. 20 ("Opp. Br.") at 40. To try and persuade this Court, Appellees quote selectively from the blog post, omitting the entire middle section in which Dr. Porter highlighted the fact that in the descriptions of ASHE conference sessions, terms like "oppress," "privilege," and "social justice" occurred far more frequently than terms related to quantitative research. *See* https://stephenporter.org/ashe-has-become-a-woke-joke. Opp. Br. at 6. Instead, Appellees quote a few disjointed sentences of Dr. Porter's blog post to support the position that a post entitled "ASHE Has Become a Woke Joke" somehow had nothing to do with wokeness or social justice. This argument is absurd. It asks this Court to both ignore and misconstrue facts pleaded in the Complaint, which

2

explicitly states that "Plaintiff's blog commented on some research a colleague of his had gathered about topics under discussion at the upcoming ASHE conference, which demonstrated that the focus of the conference had shifted from general post-secondary research to a focus on social justice." J.A. 017.

Any reasonable construction of the facts pleaded in the Complaint clearly shows that Dr. Porter's "Woke Joke" blog post criticized the social justice focus of the upcoming ASHE conference. And yet, throughout their brief, Appellees consistently argue that Dr. Porter's statements were exclusively about "internal faculty communications on topics that are squarely within Porter's 'official duties.'" Opp. Br. at 32, 35. They go so far as to suggest that Dr. Porter's "Woke Joke" post was simply him expressing "his personal preference regarding the agenda for an academic conference—not issues of social justice or diversity." Opp. Br. at 35. But virtually any argument about a matter of public concern could be characterized as an expression of "personal preference"—personal preference for lower taxes, personal preference for abortion rights, and so on and so forth.

Instead of acknowledging the obvious—that the "Woke Joke" blog post is speech on a matter of public concern—Appellees ask this Court to ignore the plain language of the post, as pleaded in the Complaint, and instead construe the facts in the light most favorable to them.

3

**B.    Appellant pleaded facts indicating Ph.D. activities were taking place within the Higher Education Program Area.**

Appellees repeatedly argue that Dr. Porter's removal from the Higher Education Program Area did not matter because, from 2015 onward, the Program Area was focused only on the Master's program, with which Dr. Porter had limited involvement. They state that he did not suffer a materially adverse action because "At most, Porter was removed from a Program Area that focuses entirely on Master's students, with whom Porter admittedly has no involvement." Opp. Br. at 15. *See also* Opp. Br. at 3, 9, 10-11, 21-22 (arguing that Dr. Porter's exclusion from the Higher Education Program Area was inconsequential because it only dealt with the Master's program). But at this stage, the Court must accept as true the facts pleaded in the Complaint. And Dr. Porter has clearly alleged that whatever distinction NCSU may have drawn on paper, Ph.D. activities were taking place within the Higher Education Program Area through at least the 2019-2020 academic year, and that he was excluded from those activities:

- "In practice, however, ELPHD ignored these new distinctions and continued to address both Master's and Ph.D. matters within the original Program Areas." J.A. 011.

- "Because ELPHD still used the Program Area designation to describe both its Master's and Ph.D. programs, Pasque was effectively proposing to exclude Plaintiff from all Higher Education activities, both Master's and doctoral." J.A. 016.

- "Plaintiff's exclusion from the Higher Education Program Area had an immediate and significant impact on his role in ELPHD. Despite

4

Defendant Pasque's assurance that Plaintiff would remain involved in the Higher Education Ph.D. program, her actions effectively erased him from every aspect of the Higher Education doctoral program." J.A. 023-024.

- "At that meeting, Defendant Lee stated that Plaintiff would be permitted to continue advising doctoral students, but that because of his involuntary exclusion from the Higher Education Program Area, he would likely not be able to participate in meetings concerning the [Diagnostic Advisement Procedure, an evaluation of second-year PhD students] as well as students' dissertation prospectuses." J.A. 026.

- "Although Higher Education Program Area meetings—from which Plaintiff had been removed—were supposed to be devoted to the Master's program, those meetings continually dealt with Ph.D. issues throughout the 2019-2020 academic year. This resulted in Plaintiff's near-total exclusion from Ph.D. activities." J.A. 026-027.

Beyond repeatedly alleging that Appellees ignored the theoretical distinction between the Program Areas and the Program Areas of Study through at least the end of the 2019-2020 academic year, Dr. Porter's Complaint also identifies specific Ph.D. activities from which he was excluded because of his removal from the Higher Education Program Area. He was excluded from the orientation for new Ph.D students, the Higher Education welcome cookout, and the Higher Education Retreat, during which the faculty discussed many issues related to the doctoral program. J.A. 024. He was excluded from the Diagnostic Advisement Procedure for second-year Ph.D. students, preventing him from serving as a reader for his advisees, and severely undermining his role as their advisor. J.A. 024. He was prevented from participating in meetings concerning his students' dissertation prospectuses. J.A.

026. He was prevented from attending the Ph.D. admissions meeting, where new advisees were assigned, ensuring he received no new Ph.D. advisees that year. J.A. 027.

Appellees cannot simply re-argue their motion to dismiss by alleging—contrary to what Dr. Porter has pleaded—that Ph.D. activities were not taking place within the Higher Education Program Area during the relevant time period. Dr. Porter has pleaded more than enough facts to plausibly allege that his ability to advise Ph.D. students—a key aspect of his job—was severely compromised by his removal from the Higher Education Program Area.

## C.    Appellant adequately pleaded that NCSU's actions have harmed his career.

Once again trying to re-argue their motion to dismiss on an alternative set of facts, Appellees claim that "Porter does not allege that he has lost any advisees; that he has been unable to recruit and obtain new advisees," or "that his future as a professor has been questioned or is in actual jeopardy." Opp. Br. at 21. But Dr. Porter *does* allege this—Appellees simply dispute his allegations. And such disputes of fact are not to be resolved on a motion to dismiss.

- "In [an email to his department head], Plaintiff also expressed his concern over how the department's systematic exclusion of him was affecting his relationship with his advisees." J.A. 025.

- "In December 2019, Plaintiff was prohibited from attending the Ph.D. admissions meeting. Because advisees are assigned during that

meeting, in this way Defendants ensured that Plaintiff was not assigned any advisees." J.A. 027.

- "With the creation of the new [Program Area of Study], Plaintiff has effectively been siloed in a PAS that is drained of students and resources. This has severely compromised his ability to perform critical job duties—such as advising Ph.D. students—and has left his future at NCSU in serious jeopardy." J.A. 029.

Because he does not work with undergraduate or Master's students, serving as a Ph.D. advisor is a key aspect of Dr. Porter's job. In addition to compromising Dr. Porter's ability to serve as an advisor to his existing advisees, Appellees prevented him from attending an important Ph.D. admissions meeting where new advisees were assigned. J.A. 027. Because of this, he was not assigned any new advisees that year, and has fewer advisees than he otherwise would as a result of these actions. At a later stage of this litigation, Appellees are free to present evidence that Dr. Porter's allegations of harm are inaccurate. But at this stage, he has more than adequately pleaded them.

## III.    APPELLANT SUFFERED AN ADVERSE EMPLOYMENT ACTION

Accepting Dr. Porter's allegations as true and construing them in the light most favorable to him, as the district court was required (but failed) to do at the motion to dismiss stage, he has more than sufficiently alleged that Appellees took actions that would deter a reasonable worker from exercising their First Amendment rights. *See Burlington & N. Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (an employment action is "materially adverse" if it "well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination."). Appellees primarily urge this Court to find otherwise by asking it to accept their version of the facts rather than Dr. Porter's, but that is inappropriate at this stage of the litigation.

In addition, Appellees cite numerous inapposite cases to "support" their argument that Dr. Porter did not suffer an adverse employment action. First, Appellees cite *Boone v. Goldin*, 178 F.3d 253 (4th Cir. 1999), a case in which a NASA employee alleged that NASA retaliated against her for complaining about racial discrimination by reassigning her to a less desirable post. Critically, unlike the instant case, *Boone* was decided on summary judgment. After both sides had presented evidence concerning Boone's new work assignment, the district court ruled—and the Fourth Circuit affirmed—that there had been no adverse employment action:

> Boone failed to present any evidence that the reassignment would reduce her opportunities for future reassignments or promotions, and NASA offered evidence to the contrary, suggesting that because of the wind tunnel's importance to its operations, the reassignment would better position Boone for future promotions. Finally, the court noted that Boone was unable to offer substantial evidence of poor working conditions in the wind tunnel.

*Boone*, 178 F.3d at 255.

Unlike Boone, Dr. Porter has had no opportunity to prove, through discovery, his allegation that Appellees' actions have reduced his opportunities for future

8

promotion or limited his ability to perform his job duties, threatening his future at NCSU. Boone, who was reassigned to "a position commanding a higher salary level and in a high-priority sector of the employer's business" that she simply found more stressful, *id.* at 256, and who was allowed discovery on her claim of an adverse employment action before her case was ultimately dismissed, is not an appropriate comparator.

Appellees next cite *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371 (4th Cir. 2004), another case decided at the summary judgment stage after the plaintiff had the opportunity to present evidence in support of his allegations. Like *Boone*, *James* was also decided prior to the Supreme Court's 2006 decision in *White* and applied the more stringent, pre-*White* standard for establishing an adverse employment action. The court in *James* held that although James was reassigned, he had "remained on course toward future promotion," 368 F.3d at 372, and had not presented evidence to substantiate how things like exclusion from meetings had adversely affected him, *id.* at 376. Unlike James, Dr. Porter has not had any opportunity to produce evidence substantiating the allegation in his complaint that his exclusion from meetings where Ph.D. advisees were assigned and where important decisions regarding his own Ph.D. advisees were made adversely affected his career at NCSU. James, therefore, is not an appropriate comparator.[1]

---

[1] In addition to *Boone* and *James*, Appellees cite numerous other summary

## IV.   THERE WAS A CAUSAL CONNECTION BETWEEN THE ADVERSE EMPLOYMENT ACTION AND APPELLANT'S PROTECTED SPEECH.

### A.   Appellant's speech was protected.

Appellees argue that despite this Court's decision in *Adams v. Trustees of the University of North Carolina – Wilmington*, 640 F.3d 550 (4th Cir. 2011), Dr. Porter's speech was not entitled to constitutional protection pursuant to the Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). *Adams*, Appellees state, did not create "a blanket rule discarding the *Garcetti* principles in the academic setting." Opp. Br. at 33. This argument is purely a red herring—Dr. Porter never argued that *Adams* created such a blanket rule. Rather, Dr. Porter argued, correctly, that *Adams* established that a public university faculty member's speech related to "scholarship and teaching"—even when undertaken pursuant to their official duties—does not lose constitutional protection under *Garcetti*.

First, Appellees' attempt to characterize Dr. Porter's "Woke Joke" blog as workplace speech covered by *Garcetti* is completely absurd. Dr. Porter published that post on his personal blog. The post concerned a conference held by an outside

---

judgment cases to argue that Dr. Porter has not plausibly alleged an adverse employment action at the motion to dismiss stage. *See Csicsmann v. Sallada*, 211 Fed. Appx. 163 (4th Cir. 2006) (summary judgment decision cited at Opp. Br. at 26); *Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007) (summary judgment decision cited at Opp. Br. at 26); *Jyachosky v. Winter*, 343 Fed. Appx. 871 (4th Cir. 2009) (summary judgment decision cited at Opp. Br. at 26); *Adams v. Anne Arundel County Pub. Sch.*, 789 F.3d 422 (4th Cir. 2015) (summary judgment decision cited at Opp. Br. at 25).

organization that, by Appellees' own admission, is "a national group, not an NC State entity." Opp. Br. at 6 n.1. And—despite Appellees' efforts to hide the ball by selective quotation from the blog—the Woke Joke post did concern issues of social justice. The entire purpose of the post was to point out that at a major national conference on higher education research, topics such as "identity," "diversity," "critical race," and "social justice" appeared more frequently than terms related to more scientific research. *See* https://stephenporter.org/ashe-has-become-a-woke-joke.

Moreover, even the two examples of speech that did take place within NCSU—Dr. Porter's criticism of the proposed diversity question and of his department's rush to hire someone with a questionable employment background—involved matters of scholarship and teaching and should have been, pursuant to this Court's decision in *Adams*, evaluated under the standard set forth in *McVey v. Stacy*, 157 F.3d 271 (4th Cir. 1998).

To support their argument that Dr. Porter's criticism of the proposed diversity question was too "vague" and thus not protected, Appellees cite *Brooks v. University of Wisconsin Board of Regents*, 406 F.3d 476 (7th Cir. 2005), an out-of-jurisdiction case that (like so many of the cases cited by Appellees) was decided on summary judgment. Opp. Br. at 38. As an initial matter, Dr. Porter's description of his criticism of the diversity question is not vague: "Citing the validity standards of the

American Educational Research Association, Plaintiff asked [the presenter] about what work had gone into the design of the question." J.A. 012. But beyond that, *Brooks* is inapposite because the Seventh Circuit's ruling that the plaintiffs had not provided enough specifics about the comments for which they faced retaliation came at the summary judgment stage—after the plaintiffs had the opportunity to develop the evidence in the record. The court did not find that the plaintiffs' *complaint* was too vague; rather, it found that following discovery, there was "not enough evidence in the record to determine whether they spoke out about matters of public concern." *Brooks*, 406 F.3d at 480.

Appellees cite a second *Brooks* case—*Brooks v. Arthur*, 685 F.3d 367 (4th Cir. 2012)—to argue that Dr. Porter's comment on the adverse publicity generated by a racially motivated job search was a "purely personal grievance" rather than a matter of public concern. Opp. Br. at 40. But *Brooks v. Arthur*—which is yet another summary judgment decision—does not support Appellees' argument. That case concerned an employee's internal grievance in which he argued that he was mistreated and disrespected because of his race. The Fourth Circuit held that Brooks' internal grievance consisted of "complaints about conditions of employment rather than broad matters of policy," and was "replete with I's and me's." *Brooks*, 685 F.3d at 372. By contrast, Dr. Porter's comment about the *national publicity* his department received following a job search that he perceived as shoddily run and

racially motivated was hardly a complaint about his "conditions of employment." Dr. Porter did not stand to lose anything personally if this candidate had been hired. Rather, he expressed his concern about how the elevation of social justice concerns over proper hiring procedures impacted the institution as a whole—something that is certainly a matter of public concern.

### B. There was a causal connection between Appellant's protected speech and the adverse employment actions.

Appellees argue that when evaluating whether there was a temporal connection between Dr. Porter's speech and their retaliatory actions, this Court must consider only the date on which the expression initially occurred, rather than the date on which the expression caused controversy on campus. Opp. Br. at 30-31. The instance of expression that ultimately resulted in Dr. Porter's removal from the Higher Education Program Area—the "Woke Joke" blog—was first published on September 3, 2018. J.A. 017. But it received little to no attention at NCSU until November 2018, when the president of ASHE criticized it in her keynote address at the organization's annual conference. J.A. 021. Appellees then spent several months, from November 2018 through February 2019, pressuring Dr. Porter to have a "community conversation" with NCSU graduate students who were supposedly upset after learning of the blog from the ASHE president's keynote. J.A. 021-022. After Dr. Porter declined to participate in this proposed struggle session, his then-

13

department chair, Penny Pasque, removed him from the Higher Education Program
Area at his very next annual review in July 2019. J.A. 023.

Appellees now argue—citing no authority—that the only relevant date is the
date on which Dr. Porter's blog was first published, even if it generated no
controversy on campus until much later. This argument defies common sense. It
would have to mean that if someone's speech or expression comes to light for the
first time and generates anger, retaliation is perfectly constitutional so long as the
speech itself first occurred sufficiently long ago. Suppose, for example, that a county
comptroller's ex-boyfriend digs up and publicizes a social media post from many
years ago in which the comptroller made controversial political statements. If she
were fired over those statements, could it really be said that there was no retaliation
because her post itself was old? Obviously not—the operative time period is the time
period in which the speech was discovered and caused controversy, not the date
when the speech itself was made.

## V.   THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Appellees' effort to distinguish *Adams v. Trustees of the Univ. of N.C.-
Wilmington*, 640 F.3d 550 (4th Cir. 2011), in which this Court denied qualified
immunity to UNC – Wilmington administrators who retaliated against a professor
for his conservative political opinions, is unavailing. At this stage, Dr. Porter has
alleged that NCSU administrators retaliated against him for his expressions of

14

opinion on matters of public concern—something that, under *Adams*, is a clearly established violation of the First Amendment. Appellees once again urge this Court to make a decision based on a factual record that has not yet been developed at this stage of litigation, suggesting (among other things) that the Individual Defendants did not intend to subject Dr. Porter to an adverse employment action without allowing Dr. Porter to engage in any discovery around the issue of those Defendants' intent. This is why a decision on qualified immunity is, at a minimum, premature at this stage.

## CONCLUSION

Despite Appellees' efforts to introduce an alternative set of facts in their brief to this Court, the fact remains that Dr. Porter has pleaded facts sufficient to plausibly allege that he suffered impermissible retaliation for his expressions of opinion on matters of public concern. Dr. Porter thus respectfully urges the Court to overturn the decision of the U.S. District Court for the Eastern District of North Carolina dismissing his complaint.

Dated: October 16, 2022

Respectfully submitted,

*/s/ Samantha K. Harris*
SAMANTHA K. HARRIS
ALLEN HARRIS PLLC
PO Box 673
Narberth, PA 19072

(860) 345-5310
sharris@allenharrislaw.com

*/s/ Jonathan A. Vogel*
JONATHAN A. VOGEL
VOGEL LAW FIRM PLLC
6000 Fairview Road
South Park Towers, Suite 1200
Charlotte, NC 28210
Telephone: 704.552.3750
Facsimile: 704.552.3705
jonathan.vogel@vogelpllc.com
*Attorneys for Plaintiff-Appellant Stephen Porter*

## CERTIFICATE OF COMPLIANCE

This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, table of contents, table of citations, signature block, certificates of counsel, addendum, attachments), this brief contains 3,585 words.

This brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman typeface.

Dated: October 16, 2022

*/s/ Samantha K. Harris*
Samantha K. Harris
Allen Harris PLLC
PO Box 673
Narberth, PA 19072
(860) 345-5310
sharris@allenharrislaw.com

*Attorney for Plaintiff-Appellant Stephen Porter*

## CERTIFICATE OF SERVICE

I certify that on October 16, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

N/A

*/s/ Samantha K. Harris*
Samantha K. Harris
Allen Harris PLLC
PO Box 673
Narberth, PA 19072
(860) 345-5310
sharris@allenharrislaw.com

*Attorney for Plaintiff-Appellant Stephen Porter*